IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LELAND T. TAYLOR,

    Plaintiff,

v.                                                                No. 1:20-cv-00267-JB-JHR

MICHELLE LUJAN GRISHAM, et al.,

    Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court on Plaintiff's *Motion for Emergency Injunctive Relief* [Doc. 8], filed March 24, 2020 and Plaintiff's *Motion to Reconsider Magistrate Denial of TRO* [Doc. 25], filed May 12, 2020. Pursuant to 28 U.S.C. § 636(b), presiding District Judge Browning referred this case to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." [Doc. 16]. Having considered the parties' submissions and all pertinent authority, I recommend that Plaintiff's *Motion for Emergency Injunctive Relief* [Doc. 8] and Plaintiff's *Motion to Reconsider Magistrate Denial of TRO* [Doc. 25] be DENIED.

### I.     PROCEDURAL BACKGROUND[1]

Plaintiff seeks relief from Executive Orders, issued by Defendant Lujan Grisham, Governor of the State of New Mexico. [Doc. 15, pp. 8-13]. Plaintiff alleges that the Orders violate the protections afforded by the First, Second, Fourth, Tenth, and Fourteenth Amendments to the United States Constitution and the Commerce Clause. [*See generally* Doc. 13]. On March 24, 2020, Plaintiff filed his original and first Amended Complaint, as well as a Motion for Emergency Injunctive Relief. [Doc. 1; Doc. 7; Doc. 8]. On April 3, 2020, the Court entered an Order to Cure

---

[1] On the record currently before the Court, the facts in this section are undisputed, except as noted.

Defects, noting that Plaintiff had not attached copies of the Orders from which he sought relief to the Amended Complaint or the Motion for Emergency Injunctive Relief. [Doc. 11, p. 3]. The Court permitted Plaintiff to file a Second Amended Complaint and an amended Motion for Emergency Injunctive Relief, requiring that Plaintiff attach copies of the orders from which he sought relief and state with particularity the relief sought. [*Id.*, p. 5].

Plaintiff filed his Second Amended Complaint on April 9, 2020. [Doc. 13]. However, no orders were attached. [*Id.*]. On April 14, 2020, the Court entered an Order to Show Cause, requiring Plaintiff to show cause why the Court should not dismiss this case for failure to attach copies of orders to the Second Amended Complaint as previously ordered. [Doc. 14]. The Court also directed Plaintiff to file an Information Sheet for a Temporary Restraining Order (TRO). Plaintiff filed his Response to the Order to Show Cause on April 15, 2020 along with Executive Orders 2020-021 and 2020-022, issued by Defendant Lujan Grisham on April 6, 2020, and the TRO Information Sheet. [Doc. 15, pp. 2-4, 13-17].

Defendants filed their Answer to Plaintiff's Second Amended Complaint on May 6, 2020. [Doc. 20]. On May 7, 2020, Plaintiff filed a Motion to Strike Defendants' responsive pleadings. [Doc. 21]. The Court ordered expedited briefing on the Motion for Emergency Injunctive Relief and Motion to Strike. [Doc. 24]. On May 12, 2020, Plaintiff filed a Motion to Reconsider Magistrate Denial of TRO. [Doc. 25]. On May 26, 2020, the Court entered an Order denying Plaintiff's Motion to Strike Defendants' responsive pleadings.

## II.   PROPOSED FINDINGS OF FACT

A temporary restraining order requires the Court to make predictions about the plaintiff's likelihood of success." *Herrera v. Santa Fe Pub. Sch.*, 792 F. Supp. 2d 1174, 1179 (D.N.M. 2011). Rule 52 of the Federal Rules of Civil Procedure states: "In granting or refusing an interlocutory

injunction, the court must [ ] state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2). Accordingly, I recommend the Court make the following factual findings:

1. On March 11, 2020, Defendant Lujan Grisham declared a state of emergency to minimize the spread of the coronavirus, otherwise known as COVID-19, and to minimize the attendant physical and economic harms. [Doc. 27, p. 5]; *see Executive Order 2020-004 (March 11, 2020), https://www.governor.state.nm.us/about-the-governor/executive-orders/ (last visited June 10, 2020).*

2. On March 23, 2020 and April 6, 2020, New Mexico Department of Health Cabinet Secretary Kathyleen Kunkel ("Secretary Kunkel") issued Public Health Orders which required all non-essential businesses to close and prohibited mass gatherings (defined as "any public or private gathering that brings together five (5) or more individuals in a single room or connected space, confined outdoor space or an open outdoor space where individuals are within six (6) feet of each other, but does not include the presence of five (5) or more individuals where those individuals regularly reside"). [Doc. 27, pp. 6, 9]; *see New Mexico Department of Health https://www.governor.state.nm.us/wp-content/uploads/2020/03/COVID-19-DOH-Order-fv.pdf (last visited June 10, 2020).*

3. On April 6, 2020, Defendant Lujan Grisham issued Executive Orders 2020-021 and 2020-022. [Doc. 15, pp. 11-17; Doc. 27, p. 8].

4. Executive Order 20-021 commutes the sentences of incarcerated persons in state correctional facilities who meet the following criteria: (1) "[t]he person's release date is no more than thirty (30) days away and the person has any necessary parole plan in place"; (2) "[t]he person is not serving a felony sentence for driving under the influence of intoxicating liquor or drugs"; (3) "[t]he

person is not a sex offender"; (4) "[t]he person is not serving a sentence for domestic abuse"; (4) "[t]he person is not serving a sentence for assault on a peace officer"; and (5) "[t]he person is not serving any enhanced term of the[ir] sentence." [Doc. 15, pp. 9-10].

5. Executive Order 2020-021 provides that "all persons who meet the criteria above [] shall receive a gubernatorial commutation of the remainder of their sentences of imprisonment. The Department of Corrections shall release these individuals at the nearest practicable time after they have been identified and may identify and release individuals on an ongoing basis during the pendency of th[e] Order." [*Id.*, p. 9].

6. Executive Order 2020-021 further provides "all individuals who receive a commutation of sentence under this Order shall, upon release, be deemed that as released on parole until the expiration of the basic term of imprisonment for which they were sentenced and until the expiration of any period of parole included as part of the person's sentence." [*Id.*, pp. 9-10].

7. Executive Order 2020-021 requires the Secretary of the New Mexico Corrections Department to "regularly compile a list of individuals who have received a commutation of sentence under th[e] Order and [to] provide any such lists to the Office of the Governor and the Office of the Secretary of State." [*Id.*, p. 10].

8. Executive Order 2020-022 extends the statewide public health emergency proclaimed in Executive Order 2020-004 through April 30, 2020 and provides that all other Executive Orders with a duration tied to the COVID-19 public health emergency, "including Executive Orders 2020-006, -007, -008, -009, -010, -011, -013, -014, -015, -016, -017, -018, -019, -020 shall continue with the same effect." [Doc. 15, p. 13; Doc. 27, p. 8; Doc. 27-1].

9. Executive Orders 2020-004, 2020-006, 2020-007, 2020-008, 2020-009, 2020-010, 2020-011, 2020-013, 2020-014, 2020-015, 2020-016, 2020-017, 2020-018, 2020-019, 2020-020, 2020-021, and 2020-022 do not require the closure of non-essential businesses or prohibit mass gatherings as defined by the New Mexico Department of Health Cabinet Secretary. [Doc. 15, pp. 11-1; Doc. 27-1]; *see https://www.governor.state.nm.us/about-the-governor/executive-orders/ (last visited June 10, 2020).*

## III.     ANALYSIS

### A. Plaintiff has not Demonstrated that he is Entitled to Emergency Injunctive Relief

The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order. *See People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018). The primary differences between a TRO and a preliminary injunction are that a TRO may issue without notice to the opposing party and that TROs are limited in duration to fourteen days. *See* Fed. R. Civ. P. 65(b)(1)-(2). In both cases, however, injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)). *See Herrera v. Santa Fe Pub. Sch.*, 792 F. Supp. 2d at 1181.

The "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) ("In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." (internal quotation marks and citation omitted)). A moving party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

1. **Plaintiff has not Demonstrated that He is Likely to Succeed on the Merits of His Free Exercise Claim**

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" The Supreme Court has observed that "[i]n addressing the constitutional protection for free exercise of religion, [its] cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *see Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 881-82. In contrast, a law that is not neutral and is not generally applicable "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Lukumi,* 508 U.S. at 531-32.

"[E]valuation of a free exercise claim typically begins by considering whether the plaintiffs have shown that a governmental action substantially burdens their religious practices." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236, 1241 (D.N.M. 2002); *see Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699 (1989). In his Second Amended Complaint, Plaintiff asserts that "Defendants have issued an Executive Order which is prima facie evidence of [a First Amendment] violation and has denied [him] and other citizens of New Mexico the right to free assembly and worship." [Doc. 13, p. 3]. According to Plaintiff, he is "a religious person and attend[s] church to worship and also gain psychological benefit from social involvement that [sic] has been severely restricted." [*Id.*].

6

The Orders referenced in Plaintiff's Second Amended Complaint and Motion for Emergency Injunctive Relief were not identified or attached to Plaintiff's filings. [Doc. 13]. After the Court ordered Plaintiff to identify and submit copies of the Orders from which he sought relief, Plaintiff submitted copies of Executive Orders 2020-021 and 2020-022. [Doc. 15, pp. 13-17]. However, neither Order restricts religious practices. Executive Order 2020-021 commutes the sentences of incarcerated individuals who meet certain criteria and provides certain conditions upon their release. [Doc. 15, pp. 9-10]. Executive Order 2020-022 extends the public health emergency declared on March 11, 2020 and provides that numerous other Executive Orders[2] issued in response to the COVID-19 pandemic, shall remain in effect. [*Id.*, pp. 11-13].

In arguing for injunctive relief, Plaintiff does not address the substance of Executive Orders 2020-021 and 2020-022 or articulate how the Orders burden his religious practices. [Doc. 15, pp. 4-8]. Defendants point out that restrictions on mass gatherings, which could have impacted Plaintiff's religious practices, were imposed by the New Mexico Department of Health Cabinet Secretary in response to the COVID-19 public health emergency. [Doc. 27, pp. 6-9]. However, because Plaintiff has not named the Cabinet Secretary as a defendant in this case or identified any of the Cabinet Secretary's Orders as the basis for the constitutional violations alleged in his Complaint, the Court cannot presume that Plaintiff intends to challenge those Orders in this case.[3] *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 n.1 (10th Cir. 2005) (acknowledging that while pro se pleadings are liberally construed, courts will not "make arguments for pro se litigants or otherwise advocate on their behalf.").

---

[2] The other Orders extended by Executive Order 2020-022 include Executive Orders: 2020-006, 2020-007, 2020-008, 2020-009, 2020-010, 2020-011, 2020-13, 2020-014, 2020-015, 2020-016, 2020-017, 2020-018, 2020-019, and 2020-020. Plaintiff does not argue and there is no evidence in the record that any of these Orders impose restrictions on religious practices. [*See generally* Doc. 15; Doc. 27].

[3] This is especially true since Plaintiff does not claim that he was prevented from attending church services due to such restrictions. [Doc. 15, pp. 4-8].

## 2. Plaintiff has not Demonstrated that He is Likely to Succeed on the Merits of His Freedom of Assembly Claim

In accord with Tenth Circuit and Supreme Court caselaw, this Court treats Plaintiff's freedom of assembly right as a right to freedom of expressive association. *Legacy Church, Inc. v. Kunkel*, No. CIV 20-0327 JB\SCY, 2020 WL 1905586, at *25-25, *38 (D.N.M. Apr. 17, 2020) (recognizing that under Tenth Circuit and Supreme Court caselaw freedom of assembly and freedom of expressive association are treated as one and the same); *see e.g.*, *McCook v. Springer Sch. Dist.*, 44 F. App'x 896, 910 (10th Cir. 2002) (unpublished) (repeating throughout the opinion that the plaintiffs brought a "freedom of assembly and association claim"); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006) (discussing associational and assembly rights under the First Amendment within the freedom of association framework).

The First Amendment to the Constitution of the United States guarantees that "Congress shall make no law ... abridging ... the right of the people peaceably to assemble." U.S. Const. amend. I. The right to assemble is applicable to state action, because the Due Process Clause of the Fourteenth Amendment incorporates the right to assemble. *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937). The right to assemble "cannot be denied without violating those fundamental principles which lie at the base of all civil and political institutions." *Id.*; *see Powell v. Alabama*, 287 U.S. 45, 67 (1932)).

Parties bringing an expressive-association claim under the First Amendment must demonstrate that they are asserting their right to associate "for the purpose of engaging in those activities protected by the First Amendment -- speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). Although an opportunity "might be described as 'associational' in the common parlance," it does

8

not necessarily follow that it involves "the sort of expressive association that the First Amendment has been held to protect." *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989). The Tenth Circuit recognizes religious gatherings in which individuals come together "for the purpose of engaging in ... religious activities" as an activity protected by the First Amendment. *Grace United Methodist Church*, 451 F.3d at 658 (internal quotation marks and citation omitted). Plaintiff argues that he has been prevented from attending church to worship and "gain psychological benefit from social interaction." [Doc. 15, p. 3]. Thus, Plaintiff is asserting its right to associate to engage in religious exercise, which is an activity protected by the First Amendment.

Expressive association is not, however, an absolute right, because "there may be countervailing principles that prevail over the right of association." *Grace United Methodist Church*, 451 F.3d at 658 (internal quotation marks and citation omitted). Infringements on expressive association "may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623; *Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1531 (10th Cir. 1994). The right to expressive association is not an absolute right and can be infringed upon if that infringement is (i) unrelated to the suppression of expressive association; (ii) due to a compelling government interest; and (iii) narrowly tailored. *See Roberts*, 468 U.S. at 623.

Here, Plaintiff has identified Executive Orders 2020-021 and 2020-022 as the basis for his expressive association claim. [Doc. 15, pp. 4-8, 13-17]. However, because Plaintiff has failed to show that the Orders infringe on his religious practices, he cannot show that he is likely to succeed on the merits of the claim. Without such a showing, preliminary injunctive relief is not available. *See Winter,* 555 U.S. at 20.

### 3. Plaintiff has not Demonstrated that He Can Satisfy the Remaining Factors of the Preliminary Injunction Analysis

In addition to demonstrating a likeliness to succeed on the merits of his constitutional claims, the party seeking injunctive relief must also show that "he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.*

In First Amendment cases, "the likelihood of success on the merits will often be the determinative factor" in deciding whether the remaining preliminary injunction factors are met since: (1) "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"; (2) "when a law is likely unconstitutional, the interests of those the government represents[], do not outweigh a plaintiff's interest in having its constitutional rights protected"; and (3) "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (alterations, internal quotation marks and citations omitted)). Where the movant has not established a likely constitutional violation and has not asserted any other support for the irreparable harm, balance of equities, and public interest factors, he is unable to show that those factors weigh in favor of granting injunctive relief. *See e.g.*, *Legacy Church, Inc.*, No. CIV 20-0327 JB\SCY, 2020 WL 1905586, at *41-43 (finding that the irreparable harm, balance of equities, and public interest factors weighed against granting injunctive relief where the plaintiff had failed to show that it was likely to succeed on its free exercise and expressive association claims and relied upon the alleged constitutional violations to support the remaining factors in the preliminary injunction analysis).

Here, Plaintiff states, in a conclusory fashion, that Defendants' actions have "caused permanent and irreparable harm," but does not otherwise address the irreparable harm, balance of

10

equities, and public interest factors. [Doc. 13, p. 3; Doc. 15, pp. 4-8]. Because Plaintiff has not has not shown that he is likely to succeed on his free exercise and expressive association claims and has not advanced any argument or evidence to suggest that the remaining factors weigh in favor of granting injunctive relief, I recommend that injunctive relief relative to Plaintiff's First Amendment claims be denied.

### 4. Plaintiff Cannot Succeed on his Fourth and Fourteenth Amendment Claims

In his Second Amended Complaint, Plaintiff asserts that "Defendant's [sic] Order" closing dine-in restaurants "takes the right to conduct business and possess property from citizens of New Mexico without due process" in violation of the Fourth Amendment. [Doc. 13, p. 3]. Again, the only Orders provided from which Plaintiff claims to seek relief Executive Orders 2020-021 and 2020-022, which relate to the commutation of sentences for certain incarcerated persons and extending the duration of the public health emergency declared in response to COVID-19. [Doc. 15, pp. 13-17]. Because Executive Orders 2020-021 and 2020-022 do not impose restrictions on business operations, they cannot serve as the basis for Plaintiff's Fourth Amendment claim.

Plaintiff also claims that "Defendant's [sic] Order has removed the protection of due process afforded in normal criminal proceedings as provided in the 14th Amendment" as "[t]he imposition of any detention, incarceration, or other violation of rights without due process may only be done under the imposition of martial law which has not been ordered." [Doc. 13, p. 8]. While Plaintiff states that the "Order" is "prima facie evidence of such failure to provide due process [because i]t is not stated what in specific the penalties may be and that is unconstitutionally vague or ambiguous," the actual basis for his claim is unclear since neither Executive Order 2020-021 nor Executive Order 2020-022 impose criminal penalties. The record does not support the

Fourth and Fourteenth Amendment violations alleged by Plaintiff and Plaintiff has failed to otherwise argue or establish the likelihood of success on these claims. [*See generally* Doc. 15].

To the extent Plaintiff is attempting to assert claims on behalf of restaurant owners or "any person with a criminal record," he is without standing to do so. [Doc. 13, pp. 3, 8]. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (Holding that the party invoking federal jurisdiction bears the burden of establishing that: (1) the plaintiff suffered a "concrete and particularized" injury that is "actual or imminent" (i.e., an "injury in fact"); (2) there is "a causal connection between the injury and the conduct complained of"; and (3) it is likely "that the injury will be redressed by a favorable decision." (internal quotation marks omitted)).

5. **Plaintiff's Claim that Executive Orders 20-021 and 20-022 Were Issued Without Legal Authority Does not Impact the Court's Preliminary Injunction Analysis.**

In his Response to the Order to Show Cause, Plaintiff argues that injunctive relief is appropriate because Defendant Lujan Grisham was without authority to issue the Executive Orders at issue. [Doc. 15, pp. 4-8]. This argument is based on Plaintiff's assertion that, as an elected official of the State of New Mexico, Defendant Lujan Grisham is required to procure, record, and file a bond, and having failed to do so, she cannot rightfully sit as Governor of the State. [*Id.*].

Plaintiff contends that Article XXII, Section 19 of the New Mexico Constitution imposes a duty upon Defendant Lujan Grisham to give bond, that the bond must be recorded and filed with the Secretary of State, pursuant to NMSA 1978, Section 10-2-5 (1893), NMSA 1978, Section 10-2-6 (1983), NMSA 1978, Section 10-2-7 (1905), and § 10-2-9 (1893), and that a failure to follow these provisions invalidates Defendant Lujan Grisham's role as Governor of the State. [*Id.*]. This argument was considered and rejected in the Court's Order denying Plaintiff's Motion to Strike Defendants' responsive pleadings. [Doc. 30].

As the Court noted, Article XXII, Section 19 of the New Mexico Constitution provides:

> Within thirty days after the issuance by the president of the United States of his proclamation announcing the result of said election so ascertained, *all officers elected at such election, except members of the legislature, shall take the oath of office and give bond* as required by this constitution or by the laws of the territory of New Mexico in case of like officers in the territory, county or district, and shall thereupon enter upon the duties of their respective offices; but the legislature may by law require such officers to give other or additional bonds as a condition of their continuance in office.

N.M. Const. art. XXII, § 19 (emphasis added). However, "[t]his section applies *only* to the first state officers elected after New Mexico became a state." *Stockton v. N.M. Taxation & Revenue Dep't*, 2007-NMCA-071, ¶ 14, 141 N.M. 860, 864 (emphasis added). Neither it nor the statutory provisions cited by Plaintiff impose a bond requirement upon current State employees or elected officials. *See id.* ¶¶ 16 (holding that that Article XXII, Section 19 did not apply the New Mexico Department of Taxation and Revenue or a New Mexico Department of Taxation and Revenue hearing officer employees and recognizing that NMSA 1978, Sections 10-2-1 through 10-2-12 "d[id] not actually impose a duty upon the hearing officer to obtain a bond, but rather describe various limitations and requirements of bondholders in general.").

Bonding for all New Mexico state employees, including Defendant Lujan Grisham, is governed by the Surety Bond Act, NMSA 1978, Sections 10-2-13 through 10-2-16 (1978, as amended through 2000). Under the Surety Bond Act, the General Services Department is responsible for procuring surety bond coverage for all employees and officials of the State. *See* § 10-2-14 (defining the "department" as the "general services department" and a state "employee" as "any officer or employee of the state"); § 10-2-15 (providing that "[t]he department shall provide surety bond coverage for all employees."). The record contains undisputed evidence of such coverage for the State's Governor. [Doc. 26-1, p. 6; Doc. 26-2, p. 1]. Accordingly, Plaintiff has not shown that Defendants have failed to comply with New Mexico's bonding requirements.

Even if Plaintiff had established a failure to comply with New Mexico's bonding requirements, such a failure would not inform the preliminary injunction analysis, which requires Plaintiff to show that he is likely to succeed on the merits of his First, Fourth, and Fourteenth Amendment claims, that he is likely to suffer irreparable harm in the absence of injunctive relief, that the balance of equities tips in his favor, and that an injunction is in the public interest, which he has not done. *Winter*, 555 U.S. at 20.

Because Plaintiff has failed to establish that he is entitled to injunctive relief on his First, Fourth, and Fourteenth Amendment claims, I recommend that the Motion for Emergency Injunctive Relief be denied. And because there is no underlying factual dispute as to whether Plaintiff has stated a viable request for a preliminary injunction, I recommend that the Motion be resolved without a hearing. *See* Charles Alan Wright Et Al., 11A Federal Practice & Procedure § 2949 ("[P]reliminary injunctions are denied without a hearing, despite a request therefor by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless."); *see Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at *3 (10th Cir.1998) (recognizing that whether to hold evidentiary hearing prior to the disposition of a preliminary injunction motion was within the discretion of the district court); *see also Carbajal v. Warner*, 2014 WL 2110027, at *4 (10th Cir. 2014) (recognizing that an evidentiary hearing is unnecessary to resolve legal issues).

### B. Plaintiff's Motion to Reconsider is Without Merit

On May 7, 2020, the Court ordered expedited briefing on Plaintiff's Motion for Emergency Injunctive Relief and Motion to Strike Defendants' responsive pleadings. [Doc. 24]. The Court found that Plaintiff had not established that relief should be granted on an ex parte basis. *See* Fed. R. Civ. P. 65(b) (providing that a temporary restraining order may be issued ex parte only if

"specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the petitioners' "attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."). Accordingly, the Court found that Defendants should be afforded an opportunity to respond to Plaintiff's Motion for Emergency Injunctive Relief and set an expedited briefing schedule. [Doc. 24]. On May 12, 2020, Plaintiff filed a Motion to Reconsider Magistrate Denial of TRO [Doc. 25].

To the extent that Plaintiff is arguing that the Court should reconsider denying injunctive relief altogether, he has misconstrued the Court's ruling and his Motion is premature, as the Court has not yet made a final determination as to whether injunctive relief should be granted. To the extent that Plaintiff seeks reconsideration of the Court's denial of injunctive relief on an ex parte basis, he has not demonstrated that reconsideration is warranted.

Reconsideration of a Court's order is appropriate where: (1) a manifest error of law or fact has been committed by the court; (2) new evidence has been discovered; or (3) there has been an intervening change in controlling law. *Servants of the Paraclete, Inc. v. Great American Ins.*, 866 F. Supp. 1560, 1581 (D.N.M. 1994); *see Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Here, the asserted grounds for relief are not clear. Plaintiff does not identify an error in the Court's ruling. [Doc. 25, pp. 2-6]. Instead, he reasserts the argument regarding Defendant Lujan Grisham's alleged failure to comply with New Mexico's bonding requirements and suggests that fines imposed on New Mexico's businesses for violating public health orders are tantamount to criminal sanctions but has not advanced any argument or provided any evidence supporting the grounds for reconsideration. [*Id.*]. Because Plaintiff has not

even attempted to show that the grounds for reconsideration are satisfied, I recommend that Plaintiff's Motion to Reconsider be denied.

## IV.     RECOMMENDATION

For the foregoing reasons, I conclude that Plaintiff has failed to establish that he is entitle to the relief requested and recommend that that Plaintiff's *Motion for Emergency Injunctive Relief* [Doc. 8] and Plaintiff's *Motion to Reconsider Magistrate Denial of TRO* [Doc. 25] be DENIED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**