IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LELAND T. TAYLOR,

        Plaintiff,

v.                                              No. 1:20-cv-00267-JB-JHR

MICHELLE LUJAN GRISHAM, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

THIS MATTER comes before the Court on the Motion and Memorandum to Quash Subpoena and for Protective Order Filed on Behalf of Chief Justice John Roberts [Doc. 47], filed June 22, 2020. Having reviewed the Motion and the relevant law, the Court finds that the Motion is well taken and should be granted.

**I.      BACKGROUND**

Plaintiff seeks relief from certain Executive Orders issued by Defendant Lujan Grisham in response to the coronavirus disease, commonly referred to as "COVID-19." [Doc. 1; Doc. 7; Doc. 13; Doc. 27-1]. Plaintiff filed his Complaint on March 24, 2020 and claims that the challenged Orders violate his rights under the First, Second, Fourth, Tenth, and Fourteenth Amendments to the United States Constitution and the Commerce Clause. [Doc. 1; Doc. 7; Doc. 13]. Plaintiff also filed a Motion for Emergency Injunctive Relief, relative to his First, Fourth, and Fourteenth Amendment claims. [Doc. 8; Doc. 15].

On May 21, 2020, a subpoena was issued in this matter directed to Chief Justice of the United States Supreme Court John Roberts ("Chief Justice Roberts"). [Doc. 47-1]. On June 22, 2020, Chief Justice Roberts moved to quash the subpoena and for a protective order shielding him from further subpoenas in this matter. [Doc. 47, pp. 2-9]. Under Rule 6(d) of the Federal Rules of

Civil Procedure and Rule 7.6 of this District's Local Rules of Civil Procedure, Plaintiff's Response

to Chief Justice Roberts' June 22, 2020 Motion was due July 9, 2020. *See* Fed. R. Civ. P. 6(d)

("When a party may or must act within a specified time after being served and service is made by

mail…3 days are added after the period would otherwise expire"); D.N.M. LR-Civ. 7.4 ("A

response must be served and filed within fourteen (14) calendar days after service of the motion.").

To date, Plaintiff has not filed a Response to the Motion.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 45 governs the procedure for obtaining discovery from a

nonparty. *See Simon v. Taylor*, No. 12-0096 JB/WPL, 2014 WL 6633917, at *14 (D.N.M. Nov.

18, 2014). "While the court has considerable discretion with regard to regulating discovery which

is exchanged in a lawsuit, discovery from third-parties in particular must, under most

circumstances, be closely regulated." *Premier Election Sol., Inc. v. Systest Labs, Inc.*, No. 09–cv–

01822–WDM–KMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009). "It is generally

recognized that a non-party involuntarily embroiled in civil litigation should not be subjected to

undue burden or significant expense merely by virtue of having received a subpoena." *W.

Convenience Stores, Inc. v. Suncor Energy (U.S.A.), Inc.*, No. 11-cv-01611-MSK-CBS, 2014 WL

1257762, at *21 (D. Colo. Mar. 27, 2014) (internal quotations omitted).

Rule 45 requires the court for the district where compliance is required to quash or modify

a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply

beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or

other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

### III.    ANALYSIS

The subpoena issued to Chief Justice Roberts makes the following demand for materials:

1. There is a case pending before the Federal District Court of New Mexico involving the violation of my and the citizens' rights of New Mexico over the imposition of Orders which are devastating to this country.

2. It appears that the actions taken by the courts of the USA are prejudicial to this and other cases, appear to support the agenda put forth behind the orders.

3. To understand the background of these orders and the courts' adhering to them, please provide your courts' research, findings of facts, conclusions of law about the Constitutionality of these orders.

4. Research on the technical, medical, or other characteristics of the CV-19 virus not gained from government supported sources. Analysis, evaluation, determination of the validity of any imposition of penalties in any form to any entity within the jurisdiction of this court. This would include the statutory authority of government agencies to enforce them.

5. Legal opinions, research, investigation, consideration of the constitutionality of the Orders relating to the CV-19 virus as would be required by any good management before making a decision on propagating or Complying with Orders.

6. Although I am only a pro-se plaintiff, it is not determinable as to how a Magistrate Judge can deny a Temporary Restraining Order for a District Judge only 2 hours after a response from the defendant and invite a Dismissal of the case simultaneously. Please provide me the statutory, procedural or Rules of Federal Procedure where this is allowed. It seems a waste of taxpayer money to have Federal District Court Judges when the Magistrate Judge acts in his behalf.

7. Copies of any employees' complaints, actions, that are in violation of #6 above and any actions taken to address the issue.

[Doc. 47-1, p. 12].

Chief Justice Roberts objects to these requests on the grounds that they are: (1) vague,

overly broad and unduly burdensome in that they do not sufficiently apprise him of the information

requested; (2) seek information that does not appear relevant to the issues in this case; (3) and seek

information protected by the judicial deliberation privilege or information relative to his official

3

actions regarding which he cannot be called to testify or produce documents. [*Id.*, pp. 3-9]. The Court agrees.

### A. Plaintiff's Requests Seek Information Beyond the Scope of Discovery Allowable Under the Federal Rules of Civil Procedure

Rule 45 subpoenas are discovery devices subject to the Court's scheduling order as well as applicable rules of procedure. *See Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D. Ind. 2001). Rule 45 subpoenas to third parties are subject to the same discovery limitations as those set out in Federal Rules of Civil Procedure 26 and 34. *See W. Convenience Stores, Inc.*, No. 11-cv-01611-MSK-CBS, 2014 WL 1257762, at *21; *Equal Employment Opportunity Comm'n v. BOK Fin. Corp.*, No. 11-1132 RB/LFG, 2012 WL 12841484, at *4 (D.N.M. Nov. 20, 2012) ("Although Rule 45 does not specifically provide for a relevance or overbreadth objection, it is well settled "that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34." (internal quotation marks and citation omitted)).

As defined by Rule 26(b)(1), the scope of allowable discovery includes any nonprivileged matter that is relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1). Parties seeking the production or inspection of documents within the scope of discovery "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). A discovery request "should be sufficiently definite and limited in scope that it can be said to 'apprise a person of ordinary intelligence what documents are required and [to enable] the court…to ascertain whether the requested documents have been produced.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008) (alterations in original) (citing Wright & Miller, 8A Federal Practice and Procedure §2211, at 415).

"Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not." *Audiotext Commc'ns v. U.S.*

*Telecom, Inc.*, No. CIV. A. 94-2395-GTV, 1995 WL 18759, at \*1 (D. Kan. Jan. 17, 1995) They

"require the respondent either to guess or move through mental gymnastics which are unreasonably

time-consuming and burdensome to determine which of many pieces of paper may conceivably

contain some detail, either obvious or hidden, within the scope of the request." *Benavidez v. New*

*Mexico Dep't of Transportation*, No. CV 12-919 MV/ACT, 2013 WL 12330028, at \*6 (D.N.M.

May 20, 2013) (internal quotation marks and citation omitted). Such requests are objectional as

overly broad. *Id.*

Here, the language of Plaintiff's first three requests, set forth in the first five paragraphs of

the subpoena,[1] are vague and overly broad. For example, Plaintiff's requests for: (1) the United

States Supreme Court's research, findings of fact, and conclusions of law regarding the

constitutionality of certain "orders" which Plaintiff claims have violated his rights and the rights

of the citizens of New Mexico; (2) legal opinions, research, or investigations pertaining to the

constitutionality of certain "orders" relating "to the CV-19 virus"; (3) "[r]esearch on the technical,

medical, or other characteristics of the CV-19 virus not gained from government supported

sources"; and (4) "[a]nalysis, evaluation, determination of the validity of any imposition of

penalties in any form to any entity within the jurisdiction of this court," use broad sweeping terms

and do not make clear what is being requested. *BOK Fin. Corp.*, No. 11-1132 RB/LFG, 2012 WL

12841484, at \*5 ("[R]equests should be reasonably specific, allowing the respondent to readily

identify what is wanted." (internal quotation marks and citation omitted)).

**B. The Relevance of the Information Sought Is Not Apparent from the Language of Plaintiff's Requests**

---

[1] Plaintiff's first three requests appear in paragraphs 1 – 5 of the subpoena. [Doc. 47-1, p. 4]. Paragraphs 1 -2 of the subpoena appear to provide background information for Plaintiff's first request, which appears in paragraph 3 of the subpoena. [*Id.*].

Rule 26(b)(1) permits discovery only of "[r]elevant information" and discovery requests must appear to be "reasonably calculated to lead to the discovery of admissible evidence." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010). Evidence is relevant if it has any tendency to make a material fact more or less probable. Fed. R. Evid. 401. Typically, relevancy is broadly construed, and a discovery request is allowed unless the information clearly can have no possible bearing on a party's claim or defense. *See*, *e.g.*, *A Major Difference, Inc. v. Wellspring Products, LLC*, 243 F.R.D. 415, 416 (D. Colo. 2006) (Rule 26(b)(1) allows broad discovery of "any matter, not privileged, which is relevant to the claim or defense of any party"). However, the trial court is vested with "broad discretion to tailor discovery narrowly." *Murphy*, 619 F.3d at 1163; *see Cabot v. Wal-Mart Stores*, No. CIV 11-0260 JB/RHS, 2012 WL 592874, at *8 (D.N.M. Feb. 16, 2012) (The Court is not required to permit a party to engage in a "fishing expedition" in the hope of supporting its claim).

In this case, Plaintiff seeks relief from executive orders issued by Defendant Lujan Grisham, Governor of the State of New Mexico. [Doc. 15, pp. 8-13]. Plaintiff alleges that the orders violate the protections afforded by the First, Second, Fourth, Tenth, and Fourteenth Amendments to the United States Constitution and the Commerce Clause. [*See generally* Doc. 13]. As Plaintiff's requests for (1) the United States Supreme Court's research, findings of fact, and conclusions of law regarding the constitutionality of certain "orders" which Plaintiff claims have violated his rights and the rights of the citizens of New Mexico; (2) legal opinions, research, or investigations pertaining to the constitutionality of certain "orders" relating "to the CV-19 virus"; (3) "[r]esearch on the technical, medical, or other characteristics of the CV-19 virus not gained from government supported sources"; and (4) "[a]nalysis, evaluation, determination of the validity of any imposition of penalties in any form to any entity within the jurisdiction of this court" do not describe with particularity the information sought, the Court cannot determine their

relevance to the claims in this case. Plaintiff has not explained how these requests are reasonably calculated to lead to the discovery of admissible evidence or how the information sought in these requests would make any material fact in the case more or less probable. Nor does Plaintiff demonstrate relevance for his request for statues or federal procedural rules that allow a Magistrate Judge to "deny a Temporary Restraining Order for a District Judge only 2 hours after a response from the defendant and invite a Dismissal of the case simultaneously" and documentation of any employee "complaints or actions" regarding violations of any statutes or rules responsive to the such statutes or rules.

In this case, Plaintiff filed a request for a temporary restraining order on March 24, 2020. [Doc. 8]. Defendants filed their Answer to Plaintiff's Second Amended Complaint on May 6, 2020. [Doc. 20]. On May 7, 2020, Plaintiff filed a motion to strike Defendants' responsive pleadings. [Doc. 21]. The Court ordered expedited briefing on the Motion for Emergency Injunctive Relief and Motion to Strike. [Doc. 24]. On May 12, 2020, Plaintiff filed a motion to reconsider magistrate denial of the temporary restraining order. [Doc. 25]. However, as discussed in the Magistrate Judge's Proposed Findings and Recommended Disposition addressing the request for a temporary restraining order and Plaintiff's motion to strike [Doc. 45], the Magistrate Judge did not deny Plaintiff's request for a temporary restraining order and, at the time the motion to reconsider denial of the temporary restraining order was filed, the Magistrate Judge had not even recommended that the Court do so. Ultimately, the Magistrate Judge recommended denial of the temporary restraining order in a PFRD filed June 16, 2020. [Doc. 45, pp. 14-15]. Plaintiff did not object to that recommendation, and the Court's Order denying the request for a temporary restraining order was filed on July 31, 2020. [Doc. 55].

Plaintiff's request implies a procedural scenario distinct from any reflected in the record for this case and Plaintiff has failed to indicate how this request is reasonably calculated to lead to

the discovery of admissible evidence or how any information responsive to the request would make any material fact in the case more or less probable.

**C. Any Requests for Information Pertaining to Chief Justice Roberts' Deliberative Processes and Communications are Protected by the Judicial Deliberation Privilege**

As Chief Justice Roberts points out, the broad language of Plaintiff's requests could be construed as seeking information regarding Chief Justice Roberts' deliberative process and/or communications. [Doc. 47, pp. 6-7]. Chief Justice Roberts responds that any such information is protected by the judicial deliberation privilege. [*Id.*].

The United States Supreme Court has indicated that examination of a judge's "mental processes" regarding a judicial proceeding "would be destructive of judicial responsibility" and that a judge "cannot be subjected to such a scrutiny." *United States v. Morgan*, 313 U.S. 409, 422 (1941). Applying this language, lower federal courts have held that "a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties." *United States v. Roth*, 332 F. Supp. 2d 565, 567 (S.D.N.Y. 2004); *see Auguste v. Sullivan*, No. 03-CV-02256-PABKLM, 2009 WL 790135, at *1 (D. Colo. Mar. 20, 2009) (same); *Ciarlone v. City of Reading*, 263 F.R.D. 198, 202 (E.D. Pa. 2009) ("The decision making process of a judge is usually not a discoverable matter."). The judicial deliberation privilege extends to: (1) the judge's internal mental processes, *see Morgan*, 313 U.S. at 422; and (2) the judge's deliberative communications with staff and other judges. *See Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit*, 783 F.2d 1488, 1520 (11th Cir. 1986).

The privilege generally serves three underlying purposes: (1) ensuring the finality of legal judgments; (2) protecting the integrity and quality of decision-making "that benefits from the free and honest development of a judge's own thinking ... in resolving cases before them"; and (3)

protecting independence and impartiality and permitting judges to decide cases without fear or favor. *See Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016) (quoting *In re Enforcement of Subpoena*, 463 Mass. 162, 168-69, 171-72, 174 (Mass. 2012)).

While the language of Plaintiff's requests does not expressly seek Chief Justice Roberts' internal mental processes or deliberative communications with staff and other judges, the Court recognizes that the requests are so broadly worded that such material could be implicated. Thus, to that extent, Plaintiff's requests would be barred by the judicial deliberation privilege.

## IV.   ORDER

For the foregoing reasons, the Court finds that the subpoena issued to Chief Justice Roberts contains requests that are vague, overly broad, and exceed the scope of discovery allowable under the Federal Rules of Procedure as well as information that may implicate the judicial deliberation privilege.

IT IS THEREFORE ORDERED that the Motion and Memorandum to Quash Subpoena and for Protective Order Filed on Behalf of Chief Justice John Roberts [Doc. 47] is hereby GRANTED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE